IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN VAUGHN,                          )
                                       )
    Plaintiff,                        )
                                       )   Case No. 3:10-00622
v.                                     )   Judge Sharp / Knowles
                                       )
JEFF LONG, SHERIFF, and                )
SOUTHERN HEALTH PARTNERS,              )
                                       )
    Defendants.                       )

# REPORT AND RECOMMENDATION

## I. Introduction and Background

Presently pending before this Court is a Motion for Summary Judgment filed by Defendant Southern Health Partners, Inc. ("Southern Health"). Docket No. 48. Along with that Motion, Defendant has filed a supporting Memorandum of Law, a Concise Statement of Undisputed Facts, and the Affidavits of Nurse Candy Roberts and Nurse Lisha Davis. Docket Nos. 48-49. Defendant also incorporates by reference the Affidavits of Sheriff Jeff Long and Security Lieutenant Mark Wainwright.[1] Docket Nos. 53-54.

Plaintiff has not filed a Response.

Plaintiff, an inmate housed at the Charles B. Bass Correctional Complex at the time he filed his Complaint, filed this pro se, in forma pauperis action, pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment Rights. Docket No. 1. Specifically, Plaintiff avers

---

[1]Defendant Jeff Long filed a separate Motion to Dismiss, which the undersigned recommended be granted in a Report and Recommendation filed July 18, 2010. *See* Docket No. 82.

1

that he did not receive his multiple sclerosis medication for twenty (20) days while housed at the Williamson County Jail, despite repeated requests. *Id.* Plaintiff sues Sheriff Jeff Long and Southern Health Partners, seeking compensatory and punitive damages. *Id.*

Defendant Southern Health Partners filed the instant Motion for Summary Judgment on March 1, 2011, alleging that it is entitled to a judgment as a matter of law because: (1) Plaintiff can provide no evidence that it was deliberately indifferent to a serious medical need; (2) respondeat superior is not a basis for the imposition of liability under § 1983; and (3) Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997(e)(a). Docket No. 49.

For the reasons discussed below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II. Facts

### A. Allegations of Plaintiff's Complaint[2]

The allegations of Plaintiff's Complaint, in their entirety, are as follows:

> I would like to file this civil suit in a pro-se fashion and proceed as a poor person. I am currently not receiving any income.
>
> My primary complaint is that I suffer from Multiple Sclerosis (MS) which is a neurological disease. I was prescribed Copaxone which is to be administered daily. I was diagnosed with this by Dr. Lance Wright at the Semmes-Murphey Clinic in Memphis, TN.
>
> I entered Williamson County Jail on March 22, 2010 and advised staff that I only had 4 doses remaining and that I would need a refill if I were to be there longer than four days. Also my wife, Leslie Vaughn, called by phone. The medical staff said they

---

[2]The allegations of Plaintiff's Complaint are not in a form required by Fed. R. Civ. P. 56, and are included to provide background information only.

would call their pharmacy to inquire about my refill. I took my
four remaining doses, each day asking about the status of my refill.
I was told each time that the jail would order my medicine and not
to worry about it. On March 25, 2010, I took my last shot and was
told that my medicine cost $3,200.00 and that the medical staff
was not sure if they would order my medicine. I was then asked
how long I could do without it. I told them about 6 days but I
would start feeling the effects of not having it.

On April 2, 2010 which was the 8th day without my medicine my
right side started going numb. I advised the nurse on duty and was
told that an appointment to see a neurologist had been made. Each
day the numbness got progressively worse. On April 7, 2010 I was
taken to see Dr. Stephen Hunter with Advanced Neuroscience in
Franklin, TN. He updated my prescription and gave [it] to the
transportation officer. Upon returning to the jail, I asked if I could
take my prescription to the medical office and he said it would be
taken care of.

On April 9, 2010 I was told I was being transferred to the Charles
B. Bass Correctional Facility in Nashville, Tennessee. While I was
dressing to leave Williamson County Corrections, I asked about
my medication and told the booking officer about my appointment
and my prescription refill. He checked and said that there was no
medication for me.

I am now housed at the Charles B. Bass Correctional Complex and
during intake, I advised the medical staff of my medical condition
and of the numbness in my body. I finally received my medicine
on April 14, 2010 and the numbness is finally starting to subside.
So for a total of twenty (20) days, I was without my medicine and I
suffered unnecessary pain and discomfort due to the indifference
of the medical staff and Sheriff's Department at Williamson
County Corrections.

I signed a Release of Information according to HIPPA guidelines
and my medical records are available for review. Why didn't a
competent medical professional review my records and see I
needed my medication daily?
In my assessment of all my pain and suffering and damage to my
nervous system and body, I am requesting ($100,000) one hundred
thousand dollars and punitive damage in the amount of two
hundred fifty thousand dollars ($250,000).

> I am filing this complaint under 42 U.S.C. 1983 and ask that the
> court please accept this complaint.

Docket No. 1.

**B. Undisputed Facts[3]**

Nurse Candy Robins obtained her LPN degree from Tennessee Technology Center in Hohenwald, Tennessee in 2002, and has been licensed by the state of Tennessee as an LPN since that time. Docket No. 48-2, Affidavit of Candy Roberts ("Roberts Aff."), ¶ 2. From 2002 to 2008, Nurse Roberts worked in a variety of health care positions. *See Id.* She has been employed by Southern Health as a LPN at the Williamson County Jail since February 4, 2008. *Id.*

Nurse Lisha Davis obtained her RN degree from Eastern Kentucky University in Richmond, Kentucky in 1994, and has been licensed as an RN by the state of Kentucky since 1995 and by the state of Tennessee since 2008. Docket No. 48-4, Affidavit of Lisha Davis ("Davis Aff."), ¶ 2. From March 2010 to February 2011, Nurse Davis was employed by Southern Health as the medical team administrator ("MTA") for the Williamson County Jail. *Id.*

Southern Health provides medical care to inmates in various jail facilities, including the Williamson County Jail. Roberts Aff., ¶ 3. For the entirety of Plaintiff's incarceration in the Williamson County Jail, Southern Health provided health care services to the inmates pursuant to a contract between Southern Health and the Williamson County Commission. *Id.* Health care in the Jail is provided under the direction of a medical director and MTA. *Id.* During the time of Plaintiff's incarceration at the Jail, Dr. Charles Sidberry was the medical director and Nurse

---

[3]The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Davis was the MTA. *Id.*

When an inmate requires routine medical care, he or she obtains an inmate's sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. *Id.*, ¶ 4. Routine sick calls are conducted by the medical staff inside the housing unit. *Id.*

Plaintiff was booked into the Williamson County Jail on March 22, 2010. *Id.*, ¶ 6. At the time of his booking, Plaintiff completed a medical questionnaire. *Id.* Plaintiff indicated on that questionnaire that he was taking Copaxone for Multiple Schlerosis ("MS") and Veramyst for seasonal allergies. *Id.* Plaintiff indicated that he was under the care of Dr. Lance Wright of the Semmes-Murphy Clinic in Memphis, Tennessee. *Id.*

Prior to March 22, 2010, Plaintiff had been incarcerated at the Jail on several other occasions, including in June 2009. *Id.*, ¶ 11. On June 18, 2009, the Jail nursing staff spoke with Plaintiff's neurologist, Dr. Lance Wright, who indicated that Plaintiff could safely go without taking his Copaxone while in Jail and resume it when he was released. *Id.*

Plaintiff came to Jail on March 22, 2010 with a supply of Copazone injections, which were due to run out on March 25, 2010. *Id.*, ¶ 9. On March 22, 2010, Dr. Sidberry entered an order for Plaintiff to receive his "home meds" of Copaxone 20 mg. injections. *Id.*, ¶ 10. Plaintiff received his Copaxone injections until they ran out on March 25, 2010. *Id.*

On March 23 and 24, 2010, Jail medical staff attempted to obtain current records from Dr. Wright, as well as from Memphis Neurology. *Id.*, ¶ 12. Jail medical staff learned that Plaintiff had not been seen at Memphis Neurology since July 2009. *Id.* When Dr. Wright's office did not respond to the medical staff's request for records, Dr. Sidberry ordered the nursing

5

staff to schedule Plaintiff for an examination with a neurologist. *Id.* Plaintiff was scheduled to see neurologist Dr. Samuel Hunter on April 7, 2010. *Id.*, ¶ 13. Dr. Sidberry did not want to order more Copaxone injections until Plaintiff underwent a neurological examination. *Id.*, ¶ 12.

On March 23, 2010, Dr. Sidberry ordered that Plaintiff's blood pressure be checked every day for seven days. *Id.*, ¶ 7. Plaintiff's medical chart includes a blood pressure record form, noting daily checks of his blood pressure from March 23 to March 29, 2010, March 31 to April 3, 2010, and April 7, 2010 (after Dr. Sidberry had ordered his blood pressure check changed to weekly). *Id.* On March 27, 2010, Plaintiff was provided Clonidine for his blood pressure. *Id.*

On April 1, 2010, a "history and physical" was completed regarding Plaintiff.[4] *Id.*, ¶ 8. Plaintiff noted that his then-current medications were Veramyst for seasonal allergies and Copazone for MS. *Id.* Plaintiff also noted that he suffered from MS and hypertension, and indicated that he had experienced muscle and joint problems in the past. *Id.* Plaintiff's physical examination returned normal results. *Id.*

On April 7, 2010, Plaintiff was transported to see neurologist Dr. Samuel Hunter with the Advanced Neuroscience Institute in Franklin, Tennessee. *Id.*, ¶ 14. After consultation, Dr. Hunter prescribed Plaintiff Copaxone 20 mg. daily for his MS. Davis Aff., ¶ 4. Upon Plaintiff's return to the Jail, Nurse Davis instructed him to have a family member pick up the prescription for Copaxone and have it filled, which was the normal procedure for a medication where the

---

[4]In her Affidavit, Nurse Roberts lists the date of Plaintiff's "history and physical" as April 1, 2011. *See* Docket No. 42-2, ¶ 8. 2011 appears to be a typographical error, however, as the date on Plaintiff's "history and physical" form itself is April 1, 2010. *See* Docket No. 42-3, p. 67. This typographical error is immaterial to the issues before the Court.

inmate was having it paid for by insurance outside the Jail. *Id.* Plaintiff did not object to this instruction, and agreed to have his family pick up the prescription. *Id.*

On April 9, 2010, Plaintiff was transferred out of the Williamson County Jail. *Id.,* ¶ 5. Plaintiff's family had not retrieved his prescription for Copaxone to be filled prior to his transfer out of the Jail. *Id.*

The Southern Health nursing staff complied with all of Dr. Sidberry's orders regarding Plaintiff. Roberts Aff., ¶ 16. During his March 22, 2010 to April 9, 2010 incarceration at the Jail, Plaintiff received his home medication of Copaxone and, after the home medication ran out, he was sent to see a neurologist for consultation pursuant to Dr. Sidberry's order. *Id.*

Plaintiff did not complete any sick call slips during his incarceration at the Jail. *Id.*, ¶ 17.

Based upon Nurse Roberts' education, training, and experience, it is her opinion that all treatment provided to Plaintiff by herself and the Jail nursing personnel was within the recognized standards of acceptable professional practice for LPN's in the community of Williamson County, Tennessee as those standards existed in 2009 and 2010. *Id.*, ¶ 18. On no occasion was Plaintiff at risk of serious harm, nor was Nurse Roberts or any member of the Southern Health medical staff ever indifferent to any complaint that Plaintiff made. *Id.*

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely

response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on March 1, 2011. Docket No. 48. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Concise Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The

> Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983 / Eighth Amendment

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. The Supreme Court explained that "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," it states a claim under § 1983. *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling*

*v. McKinney*, 509 U.S. 25, 33 (1993). Under the Eighth Amendment, inmate plaintiffs, therefore, are not required to prove they suffer from an actual physical injury. *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991) (*citing Parrish*, 800 F. 2d at 610). At the very least, however, plaintiffs must allege unnecessary pain or suffering due to prison officials' deliberate indifference. *Id*.

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). However, there must be a showing of deliberate indifference to an inmate's *serious* medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (emphasis added) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer*, 511 U.S. at 837, 844).

**D. The Case at Bar**

It is undisputed that Plaintiff was incarcerated in the Williamson County Jail from March 22, 2010 to April 9, 2010, that Plaintiff took Copaxone injections daily for treatment of his MS, that Plaintiff came to the Jail with four remaining doses of Copaxone, and that he received his medication during those four days. It is also undisputed that: (1) Jail medical staff attempted to obtain Plaintiff's then-current treatment records from his listed neurologist; (2) when they

received no response from Plaintiff's listed neurologist, the Jail medical director ordered that Plaintiff be sent to a neurologist for examination and consultation; (3) Plaintiff received the neurological consultation on April 7, 2010; (4) the neurologist issued a new prescription for Copaxone which Plaintiff's family was to have filled; and (5) Plaintiff was transferred out of the Jail prior to his family's filling of the prescription.

As has been noted, Plaintiff sues Defendant Southern Health for violation of his Eighth Amendment rights, arguing that, in not providing him with his Copaxone for twenty (20) days, Defendant was deliberately indifferent to his serious medical needs. Pursuant to the Supreme Court and the Sixth Circuit, Eighth Amendment deliberate indifference claims contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

With regard to the objective component, Plaintiff cannot establish that his medical needs were "sufficiently serious," as it is undisputed that, on June 18, 2009, Jail nursing staff spoke with Dr. Wright, Plaintiff's neurologist at the time, and Dr. Wright indicated that Plaintiff could safely go without taking his Copaxone while in Jail and resume it when he was released.

With regard to the subjective component, Plaintiff cannot demonstrate that Southern Health was "deliberately indifferent" to his needs, as the undisputed facts indicate that Defendant was anything but indifferent to Plaintiff's medical needs.

Because Plaintiff cannot establish that Southern Health was deliberately indifferent to a serious medical need, Defendant Southern Health is entitled to a judgment as a matter of law.

Moreover, Plaintiff is unable to sustain his claim against Defendant, as the company that

13

oversees the provision of Jail healthcare, because § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

### IV. Conclusion

For the forgoing reasons, the undersigned finds that there is no genuine issue of material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge